JOHN W. HUBER, United States Attorney (7226)
JOHN K. MANGUM, Assistant United States Attorney (2072)
JEFFREY E. NELSON, Assistant United States Attorney (2386)
AMANDA A. BERNDT, Assistant United States Attorney (15370)
MELINA SHIRALDI, Assistant United States Attorney (13110)
TIFFANY ROMNEY, Assistant United States Attorney (6131)
Attorneys for the Federal Defendants
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
john.mangum@usdoj.gov; jeff.nelson@usdoj.gov; amanda.berndt@usdoj.gov
melina.shiraldi@usdoj.gov; tiffany.romney@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK L. SHURTLEFF, *et al.*,<br><br>    Plaintiffs,<br><br>        vs.<br><br>SALT LAKE COUNTY DISTRICT ATTORNEY SIM GILL, *et al.*,<br><br>    Defendants. | Case No. 2:18-cv-00445-EJF<br><br><br>**FEDERAL DEFENDANTS' MOTION TO DISMISS**<br><br>Magistrate Judge Evelyn J. Furse |

Pursuant to FED. R. CIV. P. 12(b)(6), defendants United States of America, Federal

Bureau of Investigation (FBI), Salt Lake City Public Corruption Task Force (Task Force), FBI

Special Agent Michelle Pickens, FBI Special Agent Jon Isakson, and Task Force Officer Scott

Nesbitt, (collectively the Federal Defendants), by and though their undersigned counsel,

respectfully move the Court to dismiss all the claims of the First Amended Complaint (FAC)

(ECF No. 4) against these defendants on the grounds that (1) the United States, the FBI, and the

Task Force are not proper defendants in Plaintiffs' claim under *Bivens v. Six Unknown Named*

*Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971) or 42 U.S.C. § 1983; (2) Plaintiffs' claims relating to the execution of the search warrant in June 2014 are barred by Utah's four-year statute of limitations in UTAH CODE ANN. § 78B-2-307(3); and (3) defendants Pickens, Isakson, and Nesbitt are entitled to qualified immunity from Plaintiffs' *Bivens* claim.

## STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint must contain factual allegations sufficient to state a claim that is plausible on its face. *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The plaintiff bears the burden of demonstrating that the complaint meets this threshold. *Olson v. Carmack*, 641 F. App'x 822, 826-27 (10th Cir. 2016) (unpublished) (citing *Twombly,* 550 U.S. at 556).

The court accepts the allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Wasatch Equality v. Alta Ski Lifts Co*., 820 F.3d 381, 385 (10th Cir. 2016). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## PLAINTIFFS' ALLEGATIONS

Plaintiffs' claims against the Federal Defendants center on the alleged actions of FBI Supervising Special Agent Michelle Pickens, FBI Special Agent Jon Isakson, and Agent Scott Nesbitt, who was employed by the Utah Department of Public Safety (DPS). *See* FAC ¶¶ 12, 14-15. Agents Pickens and Isakson were assigned to the Task Force, which was a joint operation of the FBI and the DPS that was established to investigate allegations of criminal activity by public officials. *Id.* ¶ 15. Agent Nesbitt was appointed as a Task Force Officer with the Task Force and thus acted as an agent of the federal government with respect to his actions in that assignment. *Id.* ¶ 12.

Beginning in 2012, the Task Force began an investigation of Plaintiff Mark L. Shurtleff regarding allegations of public corruption during Mr. Shurtleff's tenure as Utah Attorney General. *Id.* ¶ 19. Agents Pickens, Isakson, and Nesbitt participated in the investigation. *Id.* The Task Force collected evidence and interviewed witnesses, including Mr. Shurtleff. *Id.* ¶¶ 43-44. In September 2013, the Department of Justice (DOJ) notified the Salt Lake City office of the FBI that DOJ had decided not to prosecute Mr. Shurtleff. *Id.* ¶ 45. The Task Force's investigation of Mr. Shurtleff proceeded thereafter, and Agents Pickens, Isakson, and Nesbitt continued to participate in the investigation. *Id.* ¶ 59.

Plaintiffs allege that on or about June 2, 2014, Agent Nesbitt signed an affidavit for a search warrant authorizing a search of Plaintiffs' residence in connection with the investigation. *Id.* ¶¶ 66-7, 69; *see* Affidavit for Search Warrant, attached hereto as Exhibit A.[1] The application

---

[1]    When documents are incorporated by a complaint, courts may look to the documents for all purposes, including to determine whether a plaintiff has stated a claim. *See, e.g., Ellison v. Roosevelt Cty. Bd. of Cty. Comm'rs*, 700 F. App'x 823, 827 n.3 (10th Cir. 2017) (unpublished)

included information developed by the Task Force's investigation. FAC ¶ 69. Based on that

application, Judge Vernice S. Trease of the Third Judicial District Court in Salt Lake County

issued a search warrant authorizing a search of Plaintiffs' residence. *Id.* ¶ 72; *see* Search

Warrant, attached hereto as Exhibit B.

Plaintiffs allege that members of the Task Force, along with federal and state law

enforcement personnel, conducted a search of Plaintiffs' residence on June 3, 2014. [2] FAC ¶¶ 75,

79. Mr. Shurtleff and his wife, M'Liss, were not in the home at that time but their children,

Thomas (an adult) and Adrianna Shurtleff (who was 17 years old at the time), were present in the

home. *Id.* ¶ 78. Plaintiffs allege that the agents and officers who entered their home did so "with

excessive force, including wielding deadly force, wearing body armor, and with drawn firearms

including assault rifles and other automatic and semi-automatic weapons," and that they

"threatened, seized, searched, and physically, verbally and emotionally abused Plaintiffs Thomas

and Adrianna." *Id.* ¶¶ 79, 81.

On July 14, 2014, Agents Nesbitt and Isakson signed a Declaration of Probable Cause in

support of an Information charging Mr. Shurtleff with various crimes. *Id.* ¶ 98;[3] *see* Information

and Declaration of Probable Cause, attached hereto as Exhibit C. Salt Lake County District

---

(*quoting Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)); *United States v. Ahidley,* 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007) (a court may take judicial notice of publicly-filed records in both federal and other courts that "bear directly upon the disposition of the case at hand"); *Garcia-Rodriguez v. Gomm,* 169 F. Supp. 3d 1221, 1227 (D. Utah 2016) (taking judicial notice of search warrant affidavits and search warrants relevant to plaintiffs' § 1983 claims of unlawful search and seizure).

[2]    The Federal Defendants' records show that the issuance of the search warrant and the search of Plaintiffs' residence occurred on June 2, 2014, not June 3 as alleged by Plaintiffs. *See* Ex. A at 49-50 (return of search warrant as executed June 2, 2014).

[3]    Paragraph 98 of the FAC erroneously states that the date was July 13, 2016.

Attorney Sim Gill and Davis County District Attorney Troy Rawlings authorized the Information for presentment and filing. *Id.* ¶ 99; *see* Ex. C at 17. The Information charged Mr. Shurtleff with the crimes of a pattern of unlawful activity (Count 1), receiving or soliciting a bribe (Counts 2-4), accepting a gift (Counts 5 and 6), accepting employment that would impair judgment (Count 7), tampering with a witness (Count 8), tampering with evidence (Count 9), and obstructing justice (Count 10). *Id.* ¶ 40; *see* Ex. C at 1-5.

Based on the Information, Judge Trease issued a Warrant of Arrest dated July 14, 2014. *Id.* ¶ 102;[4] *see* Warrant of Arrest, attached hereto as Exhibit D. Mr. Shurtleff was arrested, processed and booked into jail, and released to Pretrial Services later that day. FAC ¶ 107.

In June 2015, Mr. Rawlings filed an Amended Information regarding the charges against Mr. Shurtleff. *Id.* ¶ 50; *see* Amended Information, attached hereto as Exhibit E. On July 18, 2016, Mr. Rawlings filed a motion to dismiss the Amended Information, and on July 28, 2016, the court entered an order dismissing the case. *Id.* ¶¶ 53-54; *see* State of Utah's Motion to Dismiss Amended Information, Case No. 141907720, attached hereto as Exhibit F.

Plaintiffs allege that the search warrant application contained "false, manipulated, and distorted information" and that Judge Trease would not have issued the search warrant if "correct and complete information" had been submitted. FAC ¶¶ 62, 71. Plaintiffs allege that the issuance of a search warrant based on false information violated their Fourth Amendment right to be free of an unreasonable search and seizure. *Id.* ¶¶ 364, 368. Plaintiffs also allege that their Fourth

---

[4]    Paragraph 102 of the FAC erroneously states that the date was June 13, 2014.

Amendment rights were violated by the agents' use of excessive force in executing the search warrant at Plaintiffs' residence. *Id.* ¶¶ 368, 370.

Plaintiffs further allege that Mr. Shurtleff's subsequent arrest violated his Fourth Amendment rights because it was based on "selected evidence and misleading statements" in the Declaration of Probable Cause submitted in support of the Information. *Id.* ¶¶ 100, 368, 370. Plaintiffs allege that the Federal Defendants' participation in the investigation, search, and arrest of Mr. Shurtleff constituted a malicious prosecution. *Id.* ¶ 370. Plaintiffs seek both compensatory and punitive damages. *Id.* ¶¶ 370-71.

## ARGUMENT

### I.   The United States, the FBI, and the Task Force are not proper defendants under any of Plaintiffs' causes of action.

#### A.   Plaintiffs' *Bivens* Cause of Action

Plaintiffs' first cause of action is brought under *Bivens* and alleges unlawful search and seizure, excessive force, unlawful imprisonment, and malicious prosecution. *See* FAC ¶¶ 363-373. In *Bivens*, the Supreme Court recognized the existence of a federal cause of action for damages where an official under color of federal authority violates certain federal constitutional rights of another. 403 U.S. 388. A *Bivens* action may only be brought against officials acting in their *individual* capacities. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994). *Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies. *Id.* at 485-86; *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009). For the same reason, the Task Force is not a proper defendant. *Flores-Ramirez v. Three Unknown Fed. Task Force Agents*, No. CV 17-2360 SJO (SS), 2018 WL 1354240 at *3 (C.D. Cal. March 15, 2018) (unpublished) (dismissing a *Bivens* claim against a federal task force because it was an

improper defendant).  Because the United States, the FBI, and the Task Force are not proper

defendants in Plaintiffs' *Bivens* claim, Plaintiffs' first cause of action against those defendants

fails to state a claim on which relief can be granted and should be dismissed.

### B. Plaintiffs' Section 1983 Causes of Action

Plaintiffs assert their second, third, fourth, and fifth causes of action pursuant to 42

U.S.C. § 1983, alleging unlawful search and seizure; excessive force; unlawful imprisonment;

malicious prosecution; and implementation of "deliberately indifferent policies, practices,

customs, training and supervision," in violation of the Fourth and Fourteenth Amendments to the

U.S. Constitution. *See* FAC ¶¶ 374-436. It is not clear to what extent Plaintiffs intend to direct

any of these claims at the Federal Defendants. Regardless, any such claim against these

defendants must be dismissed, because the Federal Defendants are not proper defendants in a

Section 1983 action.

Section 1983 provides a claim for relief against state actors for violations of a plaintiff's

constitutional rights. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). A Section 1983 action

may be brought against "any person who, under color of any statute, ordinance, regulation,

custom or usage, of any State . . . subjects . . . any citizen of the United States . . . to the

deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983.

To state a Section 1983 claim, a plaintiff must allege that the constitutional deprivation

was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48

(1988). Thus, "Section 1983 has no application to the federal government or its officers."

*Wheeldin v. Wheeler*, 373 U.S. 647, 650 (1963); *see also Belhomme v. Widnall*, 127 F.3d 1214,

1217 (10th Cir. 1997) (Section 1983 "applies to actions by state and local entities, not to the

federal government."). Accordingly, Plaintiffs' second, third, fourth and fifth causes of action should be dismissed to the extent they purport to state claims against the Federal Defendants.

## II.     Plaintiffs' claims related to the execution of the search warrant are time-barred.

*Bivens* actions are governed by the statute of limitations that applies generally to personal injury actions in the state where the claim arose. *Indus. Constructors Corp. v. U. S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Because Plaintiffs' action arose in Utah, the four-year statute of limitations for personal injury in UTAH CODE ANN. § 78B-2-307(3) applies to Plaintiffs' first cause of action. *Van Tu v. Koster,* 364 F.3d 1196, 1199 (10th Cir. 2004).

The issue of when a federal cause of action accrues is controlled by federal law. *Indus. Constructors Corp.*, 15 F.3d at 968-69. "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969 (citing *United States v. Kubrick*, 444 U.S. 111, 121 (1979)). A plaintiff has "reason to know" of his injury when he should have discovered the existence and cause of his injury through the exercise of reasonable diligence. *Id.* (citing *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th Cir. 1981)). "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Id.*

Plaintiffs allege that the search of their home occurred on June 3, 2014. *See* FAC ¶ 75.[5] Therefore, the four-year statute of limitations for Plaintiffs' claims relating to that search expired no later than June 3, 2018. Plaintiffs filed their original Complaint (ECF No. 2) on Wednesday,

---

[5]     Again, the Federal Defendants' records show that the search occurred on June 2, 2014, not June 3, as alleged in the FAC ¶¶ 75, 79. *See* Ex. A at 49-50 (return or search warrant as executed June 2, 2014). In either event, the four-year statute of limitations expired prior to the filing of Plaintiffs' original Complaint on June 6, 2018.

June 6, 2018, after the four-year statute of limitations had expired. Therefore, all claims relating to the execution of the search warrant, including the alleged excessive-force claim related to that search, are time-barred and should be dismissed.

## III. The individual Federal Defendants are entitled to qualified immunity from Plaintiffs' *Bivens* claims.

Government officials are immune from suit unless their conduct violates clearly established statutory or constitutional rights about which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1982). This qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violated the law.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (*per curiam*) (holding that officer was entitled to qualified immunity when he shot a woman who refused at least two commands to put down a knife); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (this standard "'gives ample room for mistaken judgment.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (holding that officer who fatally shot fleeing suspect in the back was entitled to qualified immunity). Indeed, qualified immunity may protect an official's conduct even if the plaintiff's rights were actually violated. *See, e.g., Wilson v. Layne*, 526 U.S. 603, 614, 618 (1999) (holding that presence of media during execution of warrant violated Fourth Amendment, but granting qualified immunity because right to exclude media was not clearly established). Thus, qualified

immunity gives government officials the benefit of the doubt unless the law at the time of their conduct clearly prohibited their action. *See Malley*, 475 U.S. at 341.

Unlike the defenses available to non-governmental actors, qualified immunity protects not only against liability, but also protects government officials from litigation, including discovery and trial. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (explaining that qualified immunity protects officials from "expensive and time consuming preparation to defend the suit on its merits" and from "not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."). This is because litigation against public officials imposes substantial social costs, including "the expense of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814; *see also Filarsky v. Delia*, 566 U.S. 377, 390 (2012) (qualified immunity helps "to avoid 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits") (quoting *Richardson v. McKnight*, 521 U.S. 399, 409-11 (1997)). Because litigation exacts these costs whether or not liability is ultimately found, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter*, 502 U.S. at 227; *accord Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal citations omitted).

Determining whether a federal official is entitled to qualified immunity involves a two-prong analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en

banc)); *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). First, a court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *Thomson*, 584 F.3d at 1312. Second, if the officer violated the plaintiff's constitutional right, the court must determine whether the right was clearly established at the time the alleged violation occurred. *Id.* The court may decide which of these two prongs to address first, and need not address both. *Id.* at 1312 n.2 (citing *Pearson*, 555 U.S. at 236). The plaintiff bears the "heavy burden" of proof on both prongs. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007); *see also Thomson*, 584 F.3d at 1312.

To be "clearly established," case law from either the Supreme Court or the Tenth Circuit must place the constitutional question "beyond debate" at the time of the alleged violation. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations omitted); *Kisela*, 138 S. Ct. at 1152 (internal quotations omitted). In other words, "the legal principle must clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590.

### A.    The First Amended Complaint fails to state a Fourth Amendment claim in connection with the arrest and prosecution of Plaintiff Mark Shurtleff.

Plaintiffs allege that the Federal Defendants violated Mr. Shurtleff's Fourth Amendment rights by arresting and prosecuting him without probable cause. However, the FAC fails to allege specific facts establishing a Fourth Amendment violation. Therefore, the FAC fails at the first step of the qualified immunity analysis.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Board of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014); *see also Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1225 (D. Utah 2016). That said, a court is not required to accept as true conclusory statements or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. A court must "draw on its judicial experience and common sense" to determine "whether a complaint states a plausible claim for relief." *Id.* at 679.

Here, Mr. Shurtleff was arrested on a warrant issued by the state court, based on an Information submitted by state prosecutors and supported by a joint declaration signed by Defendants Nesbitt and Isakson. A *Bivens* claim based on an allegation that a warrant was issued without probable cause is analyzed under *Franks v. Delaware*, 438 U.S. 154 (1978). *See Harte v. Board of Comm'rs of Cty. of Johnson, Kansas*, 864 F.3d 1154, 1174 (10th Cir. 2017), *cert. dismissed sub nom. Board of Cty. Comm'rs of Johnson Cty., Kansas v. Harte,* 138 S. Ct. 576 (2018).

Under *Franks*, the court presumes that the affidavit supporting a warrant is valid. *Franks*, 438 U.S. at 171-72. Only intentional and knowingly false statements in a search or arrest warrant affidavit, or statements made with reckless disregard for the truth, can undermine a finding of

probable cause. *Id.* at 171. "[N]egligence or innocent mistake[s] are insufficient" to challenge a warrant affidavit's validity. *Id.*

As stated in *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996):

Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. *Franks,* 438 U.S. at 155-56, 98 S. Ct. at 2676-77. In a case involving information omitted from an affidavit, the existence of probable cause is determined "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." [*Stewart v. Donges,* 915 F.2d 572, 582 n.13 (10th Cir. 1990)].

Furthermore, to prevail on his claim, Mr. Shurtleff must show that the arrest warrant failed to establish probable cause for *any* state-law violation. *See Wesby*, 138 S. Ct. at 584 n.2. In other words, "so long as probable cause existed to arrest Plaintiff for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *Whittington v. Town of Surfside,* 490 F. Supp. 2d 1239, 1251 (S.D. Fla. 2007); *see also Apodaca v. City of Albuquerque,* 443 F.3d 1286, 1288-89 (10th Cir. 2006) (an arrest is valid if officer has evidence that any crime has been committed, even if probable cause is lacking for the offense cited as basis for arrest); *United States v. Saunders,* 476 F.2d 5, 7-8 (5th Cir. 1973) (when an officer makes an arrest properly supported by probable cause, to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest). In sum, if the arresting officer had probable cause to arrest *for any offense,* there is no Fourth Amendment violation. *Apodaca*, 443 F.3d at 1288-89; *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1257 (11th Cir. 2010).

13

Probable cause is defined as "a reasonable ground for belief of guilt . . . [which] means less than evidence which would justify condemnation or conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotations and citations omitted). "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 175-76 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)) (internal quotations and alterations omitted). "'[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . .'" *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) (quoting *Hill v. California*, 401 U.S. 797, 804 (1971)); *see also Stauffer v. Zavaris*, 37 F.3d 1495 (10th Cir. 1994). That criminal charges are eventually dropped does not affect the determination of probable cause at the time of the arrest. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) ("The fact that criminal charges are eventually dropped . . . has no consideration in the determination of arguable probable cause at the time of arrest."); *see also Puller v. Baca*, 781 F.3d 1190 (10th Cir. 2015) (finding probable cause existed to arrest plaintiff, even though the charges had been dismissed by the state court).

In light of these principles, the FAC falls far short of showing a Fourth Amendment violation. The FAC makes broad, conclusory allegations that the declaration in support of the Information contained false and misleading statements, but largely fails to cite to any specific statements in the declaration that are allegedly false. The FAC is also replete with allegations that the Federal Defendants should not have believed what witnesses told them, but it does not specifically allege what each Federal Defendant knew or should have known was false. *See, e.g.,*

14

FAC ¶¶ 196, 322, 330, 335. Thus, for purposes of a *Franks* analysis, the FAC leaves the Court to guess at which specific statements in the declaration should be removed. Under *Iqbal*, these general, conclusory allegations are not sufficient to show that any statements in the declaration were knowingly false or reckless, which is the standard. *Franks*, 438 U.S. at 171.

Moreover, some of the assertions in the FAC about supposed material omissions in the declaration are clearly false. For example, Counts 2 and 3 in the Information[6] charged Mr. Shurtleff with receiving or soliciting certain benefits on certain dates based on his stays at Pelican Hill Resort, a high-end resort in California, where his lodging and expenses were paid for by Marc Jenson. *See* Ex. C at 8. Jenson had previously been charged with securities fraud. *Id.* ¶ 2. The FAC alleges at ¶ 205 that defendants "failed to mention that these trips took place more than a year after Mr. Jenson entered into his plea deal with the Court." However, the declaration clearly alleges that Jenson entered the plea on May 29, 2008 (*see* Ex. C. at 6) and that the trips to Pelican Hill took place on May 4-5 and June 5-7, 2009. *Id.* at 8.

Likewise, the FAC alleges that the bribery charges brought against Mr. Shurtleff were false. FAC ¶¶ 199-217. But the allegations are woefully inadequate to show falsity, let alone that each Federal Defendant knowingly or recklessly included false information in the affidavit. Aside from the patently false allegation at FAC ¶ 205 (discussed above) that the Federal Defendants did not advise Judge Trease of the date of Jenson's plea agreement, the FAC fails to

---

[6]    In the Amended Information, the bribery charges relating to the two trips became Counts 1 and 2, respectively, and the charges were amended from Receiving or Soliciting a Bribe to Accepting a Prohibited Gift.

allege anything with the required specificity that would establish that the Federal Defendants knew that Jenson's testimony was false but nonetheless relied on it .[7]

In sum, the FAC is a mishmash of vague, conclusory, at times false, and/or immaterial allegations that do not establish a lack of probable cause for Counts 2 and 3 of the Information, let alone any other count. Therefore, any *Bivens* claims against the Federal Defendants related to the arrest and prosecution of Mr. Shurtleff should be dismissed.

**B.      There was no clearly established violation of the Fourth Amendment.**

As previously noted, to overcome a qualified immunity defense, Mr. Shurtleff must also show that it was "clearly established" that the conduct at issue amounted to a constitutional violation. For the law to be clearly established, there must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction. *Pompeo v. Board of Regents*, 852 F.3d 973, 981 (10th Cir. 2017). The Supreme Court has repeatedly warned against defining a clearly established right "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). Rather, "the

---

[7]      These examples of demonstrably false allegations in the FAC are not exhaustive, but are intended to show an overall pattern of false allegations by Plaintiffs in the FAC. In short, where Plaintiffs seek to include some specificity in their allegations, they do so by misrepresenting the contents of the underlying documents. *Compare, e.g.,* FAC ¶¶ 243-44 (asserting that the Federal Defendants misquoted a witness as stating that Mr. Shurtleff had explicitly offered to notify the witness of any consumer complaints in exchange for a $25,000 campaign donation) *with* Ex. A at 29 (the witness recalled a meeting in which Mr. Shurtleff offered to notify him of any consumer complaints and a separate, subsequent phone call from John Swallow, requesting an additional campaign donation); *compare* FAC ¶ 256 (alleging that the Federal Defendants misrepresented Jeremy Johnson's charitable donations to the court as illegal campaign contributions) *with* Ex. A at 17 (stating that Johnson had supported charities and initiatives in which Mr. Shurtleff was involved *in addition* to donating to Mr. Shurtleff's campaigns (both personally and through business partners, family, and friends)).

clearly established law must be particularized to the facts of the case." *Id.* (internal quotations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations omitted).

In practical terms, this means that under a *Franks* analysis, after removing the allegedly false statements from the affidavit, Mr. Shurtleff must show that there was no "arguable" probable cause for any of the charges leveled against him in the Information. The arguable probable cause standard reflects the second step of the qualified-immunity analysis requiring the plaintiff to show that the violation was "clearly established." *Harte*, 864 F.3d at 1179-80. "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Grider*, 618 F.3d at 1257 (citations omitted). The FAC falls far short of making this showing.

Moreover, prosecutor Troy Rawlings's motion to dismiss the Amended Information, while resulting in the dismissal of all the charges, actually *supports* a finding of qualified immunity for claims related to the arrest warrant and subsequent Information. In his motion to dismiss, Rawlings cited the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), as the primary basis for his decision to dismiss Counts I, II, IV, V and VII in the Amended Information. As explained by Rawlings, that decision "significantly narrowed the scope of the 'official act' element of the federal bribery statute in question and included language that directly implicates a constitutional issue/problem (vagueness) if such a law [like Utah's Bribery and Gift Statutes] is not restricted in meaning and scope, as the United States Supreme

Court did in *McDonnell*." *See* Ex. F ¶ 2; *see also United States v. Sampson*, 898 F.3d 287, 310 (2d Cir. 2018) (explaining that *McDonnell* narrowed and focused the legal definition of "official act" in the federal bribery statute).

Thus, the decision to drop the charges against Mr. Shurtleff was driven primarily by a significant change in the law, which postdated his arrest. In that circumstance, the law was obviously not "clearly established" at the time of the arrest that there was no probable cause to support the charges leveled against Mr. Shurtleff.

**C.    Qualified immunity protects the Federal Defendants from Plaintiffs' alleged unlawful search and seizure.**

Even if Plaintiffs' claims related to the search of their home were not time-barred, qualified immunity would still protect the Federal Defendants. First, as to the allegation that the search warrant contained falsified information and material omissions, the analysis above applies. *See supra* pp. 13-15. The FAC fails to meet the *Iqbal* pleading standard because it contains almost no specific allegations as to exactly which facts set forth in the search warrant were allegedly falsified by which Federal Defendant. Additionally, like the allegations related to the Information and arrest warrant, the FAC includes allegations regarding the search warrant that are demonstrably false. For example, Plaintiffs allege that the search warrant affidavit failed to disclose that certain recorded conversations between Mr. Shurtleff and Paul Nelson were recorded as a result of Mr. Shurtleff's cooperation with the FBI. *See* FAC ¶¶ 172-178. Plaintiffs allege that had this been disclosed to Judge Trease, the search warrant would not have been issued and executed. FAC ¶ 178. But the affidavit in support of the search warrant specifically states that the FBI recorded the conversations "with [Mr. Shurtleff's] consent." *See* Ex. A ¶ 13. With nothing more than vague, conclusory allegations, which fail to distinguish the acts of each

Federal Defendant, qualified immunity should apply to protect the Federal Defendants from liability. Therefore, Plaintiffs' claims of unlawful search and seizure related to the June 2, 2014, search warrant execution should be dismissed.

      **D.**    **Plaintiffs fail to state an excessive-force claim.**

Plaintiffs' claims regarding excessive force used during the search warrant's execution are similarly flawed. The Tenth Circuit has recognized the possibility of a claim under *Bivens* for excessive force used in the execution of a search warrant. *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017); *Holland v. Harrington*, 268 F.3d 1179, 1189-90 (10th Cir. 2001) (finding that decision to use a SWAT team, dressed in camouflage clothing and hoods, to execute a misdemeanor search warrant was not objectively unreasonable). Excessive-force claims are analyzed under the Fourth Amendment's objective-reasonableness standard. *Estate of Redd*, 848 F.3d at 906. Officers are entitled to qualified immunity, then, if their actions were objectively reasonable in light of the facts and circumstances confronting them. *Id.*; *see also Santistevan v. City of Colorado Springs*, 983 F. Supp. 2d 1295, 1318 (D. Colo. 2013).

Here, Plaintiffs allege that the Federal Defendants entered their home wearing body armor and with drawn firearms, and that the Federal Defendants knew the allegations against Mr. Shurtleff did not include allegations of violence, and thus did not require the use of force. FAC ¶¶ 79-81. First, these conclusory allegations fail to establish that each Federal Defendant acted unreasonably in executing the search warrant. On those grounds alone, the Federal Defendants are entitled to qualified immunity.

Moreover, the Tenth Circuit has yet to find a single instance in which the deployment of a SWAT-like team to execute a search warrant was excessive force under the Fourth

Amendment, regardless of the nature of the crimes being investigated. *See Santistevan*, 983 F. Supp. 2d at 1319. The Tenth Circuit's analysis in *Estate of Redd* is instructive. In that case, a team of at least twelve federal agents descended on plaintiff's home to search for evidence that the plaintiffs were illegally trafficking in Native American artifacts. *Id.* at 907. The Estate argued that the number of agents deployed to the home, all of whom were wearing bulletproof vests and carrying guns, was excessive force. The Tenth Circuit disagreed, finding that the lead agent had valid concerns related to the safety of his officers (even though the alleged crime did not involve violence), given the historical hostility toward the federal government in Blanding, Utah, and that there were practical reasons to deploy the numerous agents to the home in order to efficiently complete the search. *Id.* at 909-910.

Here, the search warrant affidavit includes specific facts regarding Mr. Shurtleff's possession of a concealed-weapons permit and his familiarity with firearms, including assault rifles. *See* Ex. A ¶¶ 174-75. This provided a reasonable basis for the Federal Defendants to believe that firearms would be found in the home. Those facts, coupled with the FBI's policy regarding the use of soft body armor when executing search warrants, establish that the Federal Defendants' actions in executing the search warrant were objectively reasonable. *See Estate of Redd*, 848 F.3d at 910-11 (recognizing the FBI's policy requiring agents be armed at all times while on duty and that agents wear body armor during the execution of search warrants). Therefore, the individual defendants are entitled to qualified immunity on Plaintiffs' excessive-force claims.

## CONCLUSION

For the foregoing reasons, the Federal Defendants request that the Court dismiss all of Plaintiffs' claims against the Federal Defendants with prejudice.

DATED this 26th day of November, 2018.

JOHN W. HUBER
United States Attorney

*/s/ Amanda A. Berndt*
AMANDA A. BERNDT
Assistant United States Attorney