**TED MCBRIDE (8236)**
**TED MCBRIDE LAW OFFICE**
4873 South State Street
Salt Lake City, UT 84107
Telephone: (435) 640-8558
Tedmcbride13@gmail.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK L. SHURTLEFF, an individual; M'LISS MARLER SHURTLEFF, an individual; THOMAS JAMES SHURTLEFF, an individual; and ADRIANNA CARLINE SHURTLEFF, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> SALT LAKE COUNTY DISTRICT ATTORNEY SIM GILL, individually and in his official capacity as Salt Lake County District Attorney; SALT LAKE COUNTY; OFFICE OF SALT LAKE COUNTY DISTRICT ATTORNEY; STATE OF UTAH; UTAH DEPARTMENT OF PUBLIC SAFETY; UTAH STATE BUREAU OF INVESTIGATION; AGENT SCOTT NESBITT, an individual; UNITED STATES OF AMERICA; COUNTY BUREAU OF INVESTIGATION (FBI); SALT LAKE PUBLIC CORRUPTION TASK FORCE; FBI SPECIAL AGENT MICHELLE PICKENS, an individual; FBI SPECIAL AGENT JON ISAKSON, an individual; and JOHN DOES 1 - 30, <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STATE OF UTAH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> **ORAL ARGUMENT REQUESTED** <br><br><br> Civil No.: 2:18 cv-00445 CW <br><br> District Court Judge: Clark Waddoups |

Plaintiffs, by and through counsel, hereby file this memorandum opposing Defendants

State of Utah, Utah Department of Public Safety and Utah State Bureau of Investigation (State Defendants') Motion to Dismiss Plaintiffs' First Amended Complaint. The basis of this motion is that State Defendants argue that Plaintiffs' claims for damages pursuant to 42 U.S.C. § 1983 are barred because Defendants are not "persons" within the meaning of 42 U.S.C. § 1983 and that they are protected from liability to suit based upon sovereign immunity. This opposition is based upon federal law that holds that a state may waive sovereign immunity as did the State Defendants in this case.

**INTRODUCTION**

The First Amended Complaint meticulously details the facts surrounding an illicit campaign to damage Mark Shurtleff and his family. Mr. Shurtleff and his family were targeted and publicly disgraced through a deliberate abuse of power wielded through the Utah criminal justice system.

The Utah Defendants, their employee Agent Scott Nesbitt, conspired and collaborated with Salt Lake County ("County") and Salt Lake County District Attorney Sim Gill ("DA GILL) (collectively referred to as "County Defendants" herein), who all choreographed their own story about the dramatic demise of a revered public servant who'd purportedly become corrupted. State, Federal and County Defendants made sure that the "tragedy" was set forth in meticulous detail, albeit false, grossly out of context and incomplete. They ensured that the saga was captured on camera for nightly news; and their story culminated with Mr. Shurtleff's incarceration and leaving an indelible image his emergence from the Salt Lake County Jail in July 2014.

Now, State, Federal and County Defendants all contend for different reasons that they are immune from liability for the alleged deliberate acts. If County Defendants' blanket assertion that qualified immunity applies, then any government official is free to fabricate, mislead, lie and ignore

evidence, predicate a felony charge on those misdeeds and do so with impunity. Our constitutional safeguards provide that public officials may not deliberately misuse their power to interfere with our basic civil rights. Mr. Shurtleff and his family had the right to be free from unreasonable and lawful search and seizure, and unlawful prosecution. Their clearly established constitutional rights were deliberately violated.

## FACTUAL BACKGROUND

The following facts stated in Plaintiffs' Amended Complaint which, taken as true as more fully addressed below, meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and interpretive federal case law to plausibly state a viable claim for relief and establish subject matter jurisdiction against State Defendants.

1. Sometime as early as 2012 an investigation was begun by the State Defendants, which assigned their employee Defendant Scott Nesbitt ("Agent Nesbitt") to investigate allegations of improper conduct by Plaintiff Mark Shurtleff ("Mr. Shurtleff") during his tenure as Attorney General. From 2012 until all charges against Mr. Shurtleff were dismissed, Agent Nesbitt remained an employee of State Defendants (Am. Compl. ¶¶ 9-12, 19.)

2. On January 13, 2014, State Defendants entered into a Memorandum of Understanding with the FBI creating the "Salt Lake City Public Corruption Task Force" (SLCPCTF.) Pursuant to that MOU (of which the Court can take judicial notice because it is referenced in the Amended Complaint) is filed herewith as Exhibit A.) The MOU, signed by an employee of the State Defendants, Utah Department of Public Saftey Commissioner Keith Squires, provided in

Paragraph 12 that the "parties agree to be responsible for the negligent or wrongful acts or omissions of their respective employees." (Am. Compl. ¶¶ 9-12.)

3. Agent Nesbitt would remain an employee of and paid by the State Defendants. (Am. Compl. ¶¶ 12.)

4. State Defendants' employee Agent Nesbit conspired and worked directly with County Defendant Gill as the lead investigator in directing, controlling the investigation including the preparation of search warrant affidavits with personal knowledge that they intentionally contained false, distorted, and misleading factual allegations. (Am. Compl. ¶¶ 30-34, 41-42, 59, 61, 64-65, 67, 70, 72, 157, 169, 181, 185, 187-89, 191, 210-12, 222, 230-31, 234-35, 239, 245, 256-58, 262, 265, 267, 276-78, 280, 282-83, 286-88, 303, 307, 310, 314, 317-18, 324-25, 327, 335, 339-42.)

5. On June 3, 2018, a number of agents (Doe Defendants) employed by the State Defendants along with federal employees entered Plaintiffs' home with excessive force including wielding deadly force, wearing body armor, and with drawn firearms including assault rifles and other automatic and semi-automatic weapons (all of which was contrary to the standard Use of Force Matrix), and conducted an unlawful search and seizure of Plaintiffs'' property. (Am. Compl. ¶¶ 12.)

6. The search warrant was issued based an affidavit drafted (with the assistance of FBI defendants) by State Defendants' employee Agent Nesbitt which he signed

under penalty of perjury and which contained knowingly false and misleading allegations. (Am. Compl. ¶¶ 12.)

7. State Defendants' employee Agent Nesbitt was not cross-deputized as a special deputy United States Marshall until July 9, 2014, but pursuant to that deputation, Agent Nesbitt was to remain an employee of the State Defendants. The deputation (of which the Court can take judicial notice because it is referenced in the Amended Complaint) is attached hereto as Exhibit B) stated that Agent Nesbitt was not being employed by the federal government. (Am. Compl. ¶¶ 12.)

8. After having Mr. Shurtleff arrested on camera, handcuffed and transported to jail for booking, Defendants held a press conference at FBI headquarters. Utah Commissioner of Public Safety Keith Squires began the news conference and announced that he had entered into an agreement with the FBI and had assigned an SBI investigator, Agent Nesbitt and other staff employees of State Defendants, to the task force. (Am. Compl. ¶¶ 35-36.)

9. After participating in the investigation, the U.S. Department of Justice declined to prosecute Mr. Shurtleff. (Am. Compl. ¶¶ 44–45.)

10. State and county officials continued the investigation, and a combined search warrant was executed on Plaintiff's home by search teams which included state and federal officers. (Am. Compl. ¶¶ 75, 79.)

11. On July 14, 2014, Mr. Shurtleff was arrested at his home by an agent of the FBI and an agent/employee of State Defendants (Am. Compl. ¶¶ 40, 107.)

12. In November 2014, after Defendant Gill narrowly won re-election as Salt Lake

District Attorney, Davis County Attorney Troy Rawlings was made a Special Assistant Attorney General by State Defendants' employee, Utah Attorney General Sean Reyes, and was given full jurisdictional and decision-making authority as the chief prosecutor for the State of Utah of the charges against Mr. Shurtleff. (Am. Compl. ¶ 49.)

13. The case was subsequently dismissed by order of the court based upon a motion by Special Assistant Attorney General Rawlings (Am. Compl. ¶ 54.)

## LEGAL STANDARD

In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-movant. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997). It is well established by the United States Supreme Court in clarifying the federal pleading standard set forth by Congress in Rule 8 of the Federal Rules of Civil Procedure, that to survive a motion to dismiss, a plaintiff's complaint need only allege enough facts, taken as true, to make his claim for relief "plausible on its face.' *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, Supra at 570, 127 S.Ct.1955 (2007).

In *Conley v. Gibson*, 355 U.S. 41 (1957), the Supreme Court began to provide additional guidance to litigants regarding the interplay between Rule 8 and Rule 12(b)(6) as follows: "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim <u>unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief</u>." 355 U.S. at 45-46 (emphasis added.) In *Twombly*, the

Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563. It continued: "Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Court further elaborated on the test, including this statement: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Id*. at 1949 (citation omitted). Where a complaint is inadequate, leave to amend the complaint is common. Rule 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader isentitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002*); accord Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Technology Ltd v., Pegasus Technologies*, 636 F. Supp.2d 57, 63 (D.D.C. 2009), (quoting *Twombly, supra,* at 556.)"

Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. Accordingly, Defendants' Motion would

be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Technology Ltd v.Pegasus Technologies,* 636 F. Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. at 512. Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied. *See, e.g., Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

The Tenth Circuit further explained that "the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiffs' complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted), cert, denied, 158 L. Ed. 2d 79, 124 S. Ct. 1411 (2004). In *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1244 (10th Cir. 1999), the Court stated "[d]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief" (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957))."

In making this review, courts take the complaint's factual allegations as true. *Zinermon v. Burch,* 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but

whether the plaintiff is entitled to offer evidence to support [his] claims." *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002), cert, denied, 538 U.S. 999, 123 S. Ct. 1908, 155 L. Ed. 2d 826 (2003).

**ARGUMENT**

Plaintiffs' case should be allowed to go forward against the State of Utah, Utah Department of Public Safety, and the Utah Bureau of Investigation because the State Defendants constructively waived sovereign immunity by entering into an MOU with the federal government, and acting under the direction and control of Defendant Sim Gill and the County Defendants, and pursuant to which the State Defendants and their officers, agents and employees should be held accountable for violating Plaintiffs' civil rights. By waiving sovereign immunity by the willful and joint participation in the alleged civil rights violations, State Defendants can and should be held liable for their actions as other "entities" which may be sued under Section 1983.

State Defendants correctly state that the U.S. Supreme Court has interpreted "persons" in § 1983 to exclude states. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72-74 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. at 71. State governmental entities are generally considered arms of the State which are protected from lawsuits brought by its citizens pursuant to the sovereign immunity protection provided by the Eleventh Amendment.

State Defendants have also correctly argued that the courts have stated that Section 1983 was not intended to abrogate Eleventh Amendment immunity. However, State Defendants have failed to mention that the courts have also recognized and ruled that states can waive

sovereign immunity and if they do, they may be held liable for damages to their citizens in lawsuits against them particularly in actions filed against a state for violation of federal or state constitutions. See e.g. *Department of Revenue v. Kuhnlein*, 646 SO 2d 717, 721 (FL Supreme Court 1994 (reasoning that is because any other rule self-evidently would make constitutional law subservient to the State's will. Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions.)

Whether a state can directly or implicitly waive sovereign immunity in Section 1983 cases is a matter of first impression for the federal courts. However, the arguments extended by courts in other types of litigation against a state are instructive and Plaintiffs' urge this Court to consider extending federal law in this arena. For example, the Tenth Circuit held in *Green v. State of Utah,* 539 F.2d 1266, 1270 (10th Cir. 1976) that "there is no dispute concerning the possibility that the immunity bar can be waived or, in other words, that the state can consent to be sued in federal court" That Court also held that waiver of sovereign immunity can be implicit. *Id.*

The door of waiver of the state's immunity to suit in federal court was opened widest by the Supreme Court in *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Since 1927, the State of Alabama had been operating the Terminal Railway; the Federal Employers' Liability Act (FELA) had been enacted approximately twenty years previous to Alabama's entry into the railroad business. The FELA provided that "(e)very common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . ." The suit was instituted by persons who sought damages under FELA

for personal injuries sustained while employed by the state's railroad. Alabama carried the day in the district and circuit courts relying on sovereign immunity as a defense. The Supreme Court rejected state immunity by saying (as cited by the Tenth Circuit in *Green, supra* at 1270-710:

> "We think that Congress, in making the FELA applicable to "every" common carrier by railroad in interstate commerce, meant what it said. That congressional statutes regulating railroads in interstate commerce apply to such railroads whether they are state owned or privately owned is hardly a novel proposition . . . .
>
> . . . To read a "sovereign immunity exception" into the Act would result, moreover, in a right without a remedy; it would mean that Congress made "every" interstate railroad liable in damages to injured employees but left one class of such employees those whose employers happen to be state owned without any effective means of enforcing that liability.
>
> . . . It remains the law that a State may not be sued by an individual without its consent. Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act. By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit.

## CONCLUSION

As a matter of fundamental fairness, the State of Utah in this case should not be permitted to avoid all liability for the actions of its employees and agents and its choice to enter into agreements with Federal agencies and local municipal agencies, where those actions initiated and empowered the malicious prosecution of Mr. Shurtleff and the deprivation of Plaintiffs' constitutional and civil rights by its officers and agents. Plaintiffs respectfully request that his Court find and rule that

11

based upon the allegations in the Amended Complaint, taken as true, State Defendants implicitly waived sovereign immunity and may be sued in this matter.

Dated this 16th day of January 2019.

**TED MCBRIDE LAW OFFICE**

/s/ Edward W. McBride, Jr.
Edward W. McBride, Jr